**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | **Case No. 19-cr-00229-PWG** |
| **v.** | * | |
| | * | |
| | * | |
| **DEANTE MANDEL DUCKETT** | * | |
| | * | |
| | * | |
| **Defendant** | * | |
| | ************ | |

## MEMORANDUM OPINION AND ORDER OF COURT

This matter is before the Court on the defendant's Motion to Reconsider Detention and Order Pretrial Release (ECF No. 38) (the "Motion") and the government's Opposition to Motion to Reconsider Detention and Order Pretrial Release (ECF No. 40) (the "Opposition"). The issues have been fully briefed, and no hearing is necessary. L.R. 105.6. For the reasons stated below, the Motion is **DENIED**.

## I.  PROCEDURAL HISTORY

On May 6, 2019, a federal grand jury returned an indictment charging the defendant with three counts of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). An initial appearance was conducted on May 10, 2019. The defendant appeared before United States Magistrate Judge Timothy J. Sullivan for a detention hearing on May 23, 2019. After hearing from the parties, Magistrate Judge Sullivan found by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community and ordered that the defendant be detained. In so finding, Magistrate Judge Sullivan noted:

> Weight of the evidence is very strong.   [Defendant] has history of firearm
> convictions.  It appears that the [defendant] committed the conduct charged while
> under supervision by Md P&P.   At this time, the proposed TPC in DC is not
> suitable.  There are no conditions and/or combination of conditions to reasonably
> assure the safety of the community at this time.

Order of Detention Pending Trial (ECF No. 13 at 3).

Two weeks later, on June 6, 2019, the defendant filed a Motion to Reconsider Order of

Detention in which he requested that he be released to reside with an appropriate third-party

custodian under conditions including 24-hour home electronic home monitoring with release for

medical and legal obligation appointments.  *See* Motion to Reconsider Order of Detention (ECF

No. 14).

On June 10, 2019, Magistrate Judge Sullivan released the defendant on conditions of

release, including home detention with location monitoring.  *See* Order Setting Conditions of

Release (ECF No. 17).   One month later, on July 11, 2019, the defendant's Pretrial Services

officer notified the Court that the defendant had removed his ankle transmitter and that his

whereabouts were unknown.  An arrest warrant was issued.  The defendant was arrested on the

warrant about five months later in December 2019.   On December 13, 2019, the defendant

appeared before this Court for a bail review/detention hearing.

## II.  BAIL REVIEW/DETENTION HEARING

At the bail review/detention hearing, the government argued that the defendant should be

detained pending trial on the grounds of risk of flight and danger to the community.   The

government pointed out that the defendant removed his ankle transmitter while on home

detention and absconded from supervision for five months.  The government also advised the

Court that a firearm and ammunition were found in the defendant's apartment at the time of his

arrest.   The defendant essentially conceded detention.   He asked the Court, however, for a

specific recommendation on the facility where he should be detained.  After hearing from the parties, the Court revoked the defendant's pretrial release and ordered that he be detained, finding by clear and convincing evidence that the defendant had violated a condition of release and that he was unlikely to abide by any condition or combination of conditions of release (Order of Detention Pending Trial (ECF No. 28).  *See* 18 U.S.C. § 3148(b).  At the present time the defendant is detained in the D.C. Department of Corrections (the "DOC") at the Central Treatment Facility ("CTF").[1]

III. ANALYSIS

Under 18 U.S.C. § 3142(f), a detention hearing

> may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

The defendant argues that the detention hearing should be reopened because information exists that was not known to him at the time of the hearing, and that this information has a material bearing on the issue of whether there are conditions of release that will reasonably assure his appearance as required and the safety of any other person and the community.  He then argues that, considering the new information, conditions of release can be fashioned to assure his appearance as required and the safety of any other person and the community.  Specifically, the defendant asserts:

> Although Mr. Duckett's underlying offenses involve firearms, they are non-violent possession offenses.  He has strong ties within the community and a place to stay with his fiancée.  Mr. Duckett has also experienced firsthand the difficulty in receiving medical within D.C. DOC under normal operational

---

[1] Many pretrial detainees from the District of Maryland are detained in CTF and the D.C. Jail, both part of the DOC.

conditions.  Prior to the pandemic, Mr. Duckett contracted a bacterial infection in his stomach, which he believes is attributable to the lack of clean water at the facility.  Mr. Duckett also reports that he was exposed to tuberculosis in January 2020.  The defense is concerned that D.C. DOC cannot properly sanitize the living and common areas, provide for appropriate distancing, and is unable [to] provide for widespread testing and treatment.

Motion (ECF No. 38 at 1-2 (footnote omitted).

In support of the Motion, the defendant directs the Court's attention to statistics regarding the number of detainees in the DOC who have tested positive for COVID-19 and are in quarantine.  *See* Motion (ECF No. 38 at 2).  The defendant outlines the preventive measures recommended by the Centers for Disease Control and Prevention and asserts that the DOC has largely failed to implement those measures and protect its residents from exposure to COVID-19.  *See* Motion (ECF No. 38 at 2-5).  The defendant then cites recent cases from the United States District Court for the District of Columbia and other districts releasing detainees because of concerns raised by the coronavirus pandemic.  *See* Motion (ECF No. at 5-7).  Finally, the defendant argues that there is a high likelihood that he has been exposed to the virus.  *See* Motion (ECF. No. 38 at 8).

COVID-19 is a worldwide pandemic that has had a profound impact on the health and daily life of millions of people.  In the recent case of *Coreas v. Bounds*, Civil Action No. TDC-20-0780, 2020 WL 1663133 (D. Md. Apr. 3, 2020), United States District Judge Theodore D. Chuang summarized the nature of the virus, the risks of exposure to it, and the steps employed by local governments and communities to curtail its spread:

The virus identified as SARS-CoV-2, commonly referred to as the novel coronavirus ("the Coronavirus"), has caused a global pandemic of the condition known as COVID-19.  As of April 3, 2020, there were 932,166 confirmed cases and 46,764 deaths worldwide.  *Coronavirus Disease (COVID-19) Pandemic*, World Health Org., https://www.who.int/emergencies/diseases/novel-coronavirus-2019.  As of April 2, 2020, there were 213,144 confirmed cases and 4,513 deaths in the United States.  *Cases in U.S.*, Ctrs. for Disease Control and Prevention,

https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.  The Centers for Disease Control and Prevention ("CDC") has projected that, without effective public health intervention, about 200 million people in the United States may contract the disease, and, under some projections, as many as 1.5 million people in the United States may die from the disease.  Another organization's projection puts the potential number of American fatalities at 2.2 million.  Moreover, some evidence suggests that, even when not fatal, COVID-19 results in long-term, serious illnesses, which may include severe damage to internal organs, in about 16 percent of cases.

COVID-19 poses special risks for the elderly and those with certain preexisting medical conditions.  *Amici Curiae* Public Health and Human Rights Experts Br. at 6-7, ECF No. 32.  The CDC has identified several medical conditions that place an individual at an increased risk of serious COVID-19 complications: "blood disorders, chronic kidney or liver disease, compromised immune system, endocrine disorders, including diabetes, metabolic disorders, heart and lung disease, neurological[,] neurologic and neurodevelopmental conditions, and current or recent pregnancy."  Greifinger Decl. ¶ 7, Reply Mot. TRO ("Reply") Ex. 6, ECF No. 52-6.  Of those who have died from COVID-19 in Italy, another country experiencing a high number of COVID-19 cases, about three-fourths had high blood pressure, one-third had diabetes, and one-third had heart disease.  According to Dr. Jonathan Louis Golob, an Assistant Professor at the University of Michigan School of Medicine, there is evidence that in the highest risk populations, COVID-19 causes death in about 15 percent of cases.  Preliminary data from China has shown that 20 percent of COVID-19 cases involving high-risk categories have resulted in death.

There is no vaccine, antiviral treatment, or cure for COVID-19.  The Coronavirus is believed to spread through "droplets" that can be transmitted during close interpersonal contact, though these droplets can also survive on surfaces for days and spread the disease even absent such close contact.  *Id.* ¶ 21.  There is some evidence that individuals with the Coronavirus can transmit it to others even when they are not yet symptomatic.  Public health measures aiming to stop the spread of the virus—most notably the practice of social distancing—have been widespread: "[s]chools, courts, collegiate and professional sports, theater and other congregate settings have been closed," *id.* ¶ 8, and many states have issued mandatory social distancing polices.  The Governor of Maryland issued a stay-at-home order on March 30, 2020.  *See* Order of the Governor of the State of Maryland § II, No. 20-03-30-01 (Mar. 30, 2020), https://governor.maryland.gov/wp-content/uploads/2020/03/Gatherings-FOURTH-AMENDED-3.30.20.pdf.  As of April 2, 2020, 40 states and the District of Columbia had issued stay-at-home or shelter-in-place orders.  *See These States Have Implemented Stay-at-Home Orders*, CNN (Apr. 2, 2020), https://www.cnn.com/2020/03/23/us/coronavirus-which-states-stay-at-home-order-trnd/index.html.

*Coreas*, 2020 WL 1663133, at *1-2.

Judge Chuang also reviewed the vulnerabilities of persons detained in jails and detention

facilities caused by COVID-19:

> Prisons, jails, and detention centers are especially vulnerable to outbreaks
> of COVID-19.  First, even if these facilities suspend in-person visitation, the staff,
> contractors, and vendors working at the facilities can still introduce the
> Coronavirus into the facility, a risk that is all the more difficult to contain because
> asymptomatic individuals can transmit the virus and because these facilities lack
> the capacity to screen for the virus in asymptomatic individuals.  According to
> Petitioners' expert, Dr. Robert B. Greifinger, an expert on prison and jail health
> care and the former manager of medical care for the New York State prison
> system, "[j]ails and detention centers are congregate environments where the risk
> of infection and infectious spread are extraordinarily high."  Greifinger Decl.
> ¶¶ 1-2, 16.  Indeed, there have already been confirmed outbreaks of COVID-19 at
> several prisons and detention facilities across the United States, including the
> Rikers Island detention facility in New York City, the Cook County Jail in
> Chicago, Illinois, and the federal prison in Oakdale, Louisiana, as well as certain
> New Jersey jails housing ICE detainees.  In this region, COVID-19 has been
> identified in the Clifton T. Perkins Hospital Center, a psychiatric hospital in
> Jessup, Maryland; and the D.C. Jail in Washington, D.C.
>
> Second, once the Coronavirus is introduced into a detention facility, the
> nature of these facilities makes the mitigation measures introduced elsewhere in
> the country difficult or impossible to implement.  Detention facilities often lack
> personal protective equipment that helps prevent the transmission of the virus.
> Shared facilities, such as bathrooms, dining halls, and telephones, are often not
> disinfected between uses.  Poor ventilation increases the risk of transmission.
> Detained individuals are often not given the opportunity or tools to wash or
> sanitize their hands frequently.  And the crowded nature of the facilities can make
> social distancing recommended by the CDC impossible.

*Id.* at *2.

At the outset, the Court finds that the unprecedented magnitude of the COVID-19

pandemic and the heightened risk of exposure to residents of detention facilities constitute new

information having a material bearing on whether conditions of release can be fashioned to

assure the appearance of the defendant as required and the safety of the community.  *See, e.g.*,

*United States v. Bilbrough*, Criminal Case No. TDC-20-0033, Order at 4 (D. Md. Mar. 20, 2020),

*aff'd*, 2020 WL 1694362 (D. Md. Apr. 7, 2020); *United States v. Martin*, Criminal Case No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020). Given that finding, the Court now reviews the factors set forth in 18 U.S.C. § 3142(g) to determine if there are conditions of release that could be fashioned to assure the defendant's appearance as required and the safety of the community.

In support of his argument for release, the defendant relies almost exclusively on his risk of exposure to COVID-19 while detained at CTF. In that regard, he does not aver that he has contracted COVID-19, that he has been exposed to anyone who has contracted the virus, or that he has exhibited COVID-19-type symptoms. Rather, he relies on the generalized greater risk of exposure and contraction of COVID-19 for residents of detention facilities. He does note that he has some health issues. He asserts that prior to the pandemic he contracted a bacterial infection in his stomach, which he "believes" is attributable to the lack of clean water at the facility. Further, he reports that he was exposed to tuberculosis in January 2020. *See* Motion (ECF No. 38 at 1-2). The defendant, however, does not provide any medical documentation supporting these claims. Assuming *arguendo* that he suffers from these ailments, he fails to articulate in any detail, however, how his risk of exposure to COVID-19 potentially exacerbates those conditions or that he has not received proper treatment for them. This differentiates the defendant from many other pretrial detainees in this district who recently have filed petitions for release citing the potential increased risk of COVID-19 complications due to advanced age or a specific health condition. *See, e.g.*, *Bilbrough*, 2020 WL 1694362, at *4 (diabetes); *United States v. Gray*, Criminal Case No. GJH-19-407, 2020 WL 1554392, at *2 (D. Md. Apr. 1, 2020) (diminished immune system, heart flutters, shortness of breath); *United States v. Williams*, Criminal Case No. PWG-13-544, 2020 WL 1434130, at *2 (D. Md. filed Mar. 24, 2020) (advanced age); *Martin*,

2020 WL 1274857, at *4 (diabetes, asthma, high blood pressure).  Some defendants even have claimed to have contracted COVID-19.  *See, e.g.*, *United States v. McCormick*, Criminal Case No. GLR-19-0318 (D. Md. filed Apr. 2, 2020); *United States v. West*, Criminal Case No. ELH-19-0364, 2020 WL 1638840 (D. Md. Apr. 2, 2020).  The defendant does not claim any of these specific risk factors.

In response, the government cites recent cases from this district that have denied similar claims and motions for release.  *See* Opposition (ECF No. 40 at 1-2).  The government also apprises the Court of the comprehensive precautionary measures implemented by DOC to avoid a COVID-19 outbreak and transmission of the virus.  *See* Opposition (ECF No. 40 at 7-13). Finally, the government discusses the factors contained in 18 U.S.C. § 3142(g) as they pertain to the defendant.

The government proffers that, on three dates in March and April 2019, the defendant sold a total of seven firearms to a confidential source.  Thus, the Court finds that the defendant is charged with an offense involving a firearm.  *See* 18 U.S.C. § 3142(g)(1).  Regarding the weight of the evidence, the government proffers that it is strong and compelling.  The controlled buys of the firearms and in-person discussions were captured on audio/video recordings.  The government also has damaging text message conversations.  Magistrate Judge Sullivan agreed at the time of the initial detention hearing that the weight of the evidence was strong.  *See id.* § 3142(g)(2).  The defendant does not challenge Judge Sullivan's finding, and this Court adopts it.  Regarding the history and characteristics of the defendant, the defendant points to his strong ties within the community and that he has a place to stay with his fiancée.  The government counters by highlighting the defendant's substantial criminal history.  The defendant's criminal history includes convictions for Armed Robbery, Theft, Concealed Deadly Weapon, Possession

of a Handgun, First Degree Burglary, and Possession with Intent to Distribute a Controlled Substance.  He has been found guilty of violation of probation two times.  His record also notes several failures to appear warrants issued.  *See id.* § 3142(g)(3).  The final factor for the Court to consider is the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  *See id.* § 3142(g)(4).  Here, the Court finds that the defendant would pose a serious danger to the community if released.  There is strong evidence that, in the span of six weeks, the defendant sold seven firearms to a confidential source.  He has been previously convicted of several weapons offenses, including armed robbery, as well as a felony controlled-substance offense.  As such, the defendant was prohibited from possessing a firearm, let alone selling one.  The government proffers that, when the defendant was arrested on the bail violation warrant, he was in possession of a stolen handgun.  Significantly, the Court notes that, while he was on pretrial release in this case, the defendant cut off his ankle transmitter and absconded from supervision.  Clearly, the defendant would pose a danger to the community if released, given the strength of the government's evidence, his criminal history, and his conduct while on pretrial release in this case.

The defendant does not challenge Judge Sullivan's original findings and order of detention based on his consideration of the § 3142(g) factors at the time.  As stated earlier, the defendant's primary basis for requesting release at this time is his potential exposure to COVID-19 while detained.  This is but one factor for the court to consider and weigh in the release determination.  The Court must consider and weight all the factors set forth in § 3142(g) in making its decision.  The Court finds that the majority of the factors weighs in favor of detention and far outweighs the generalized risk to exposure to COVID-19.  "[T]he mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person

accused." *United States v. Ray*, Criminal Case No. TDC-19-215, 2020 WL 1849764, at *1 (D. Md. Apr. 13, 2020). Further, when a detainee's "health and safety are not being satisfactorily protected at CTF, the solution . . . is to address the conditions of detention, not . . . release." *Bilbrough*, 2020 WL 1694362, at *4.

The defendant does not propose any plan for release or suggest any conditions of release that the Court should consider. This is not fatal to the defendant's request, however, because the Court finds that there are no conditions of release that could be fashioned to assure the defendant's appearance as required and the safety of the community. Indeed, the defendant had been released previously with the condition of home detention with location monitoring. He was restricted to the residence of a third-party custodian except for medical purposes, court appearances, attorney visits, or other activities specifically approved by Pretrial Services in advance. *See* Order Setting Conditions of Release (ECF No. 17). That condition significantly restricted the defendant's movements short of detention. That strict condition of release is not available currently, even if the Court was going to consider it. Traditional home detention with location monitoring was an available option up until a few weeks ago but is not available at this time. Traditional home detention with location monitoring requires a probation officer to install a transmitter to the defendant's ankle. That practice, however, does not permit the probation officer to maintain an appropriate social distance, thereby potentially placing the probation officer and the defendant at a higher risk of transmitting the COVID-19 virus. As such, the United States Probation Office has suspended this traditional location monitoring and instead now employs other location monitoring techniques, including SmartLink, VoiceID, and Home Incarceration by Phone. The Court finds that these alternative technologies would not be sufficient in this case to assure the safety of the community. They would not monitor the

defendant's location in real time.  Rather, they would determine the defendant's location on a periodic basis throughout the day.  Given the fact that the defendant cut off his ankle transmitter and absconded from supervision, these alternatives are not appropriate.

## **ORDER**

Accordingly, it is this 17th day of April 2020, hereby **ORDERED** that the defendant's Motion to Reconsider Detention and Order Pretrial Release (ECF No. 38) is **DENIED.**


Date: April 17, 2020                                    _____/s/_____
                                                                    Thomas M. DiGirolamo
                                                                    United States Magistrate Judge